IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 28 1997

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ROBERT JOE McSPADDEN, § | |
| Petitioner § | |
| § | |
| v. § | Civil Action No.B-94-289 |
| § | |
| WAYNE SCOTT, DIRECTOR, § | |
| Texas Department of Criminal § | |
| Justice, Institutional Division § | |
| Respondents § | |

PETITIONER'S ANSWER TO RESPONDENTS OBJECTION TO THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Petitioner in the above entitled and numbered cause and makes this Petitioners Answer to Respondents Objection to the Magistrate Judges Report and Recommendation. In support thereof, the Petitioner would respectfully show the court the following:

I.

On the 31st day of December, 1996, the Respondent entered his Objection to the Magistrate Judges Report and Recommendation stating that the Petitioner never mentioned anywhere in his state habeas proceeding, the claim "That rule of witnesses was in effect but that witnesses were briefed all through the trial." On page 3, lines 11 through 13 of the state habeas corpus, Appl.No.26,733-01 that claim was presented to the state court for ruling. Therefore Petitioner has effectively exhausted state remedies on that claim. Codified in 28 U.S.C. §2254 (b) and (c)

Since Petitioner has shown that the claim Respondent says was not in the state habeas proceeding, was in fact in the habeas corpus all along, then Petitioner has effectively exhausted state remedies and therefore the court should not dismiss the habeas corpus and the Magistrate Judge's report and recommendation should stand and the Honorable Court should make a favorable ruling for the Petitioner.

Respectfully submitted

*/s/ Robert Lee McSpadden*
Robert Joe McSpadden
600096   Clements
9601 Spur 591
Amarillo, Tx.  79107

## UNSWORN DECLARATION

I Robert Joe McSpadden, 600096, being presently incarcerated in Clements Unit of TDCJ-ID, Potter County, Texas, do declare under penalty of perjury that the foregoing is true and correct.

Executed on January 10, 1997     /s/ *Robert Lee McSpadden*

-2-   094

CERTIFICATE OF SERVICE

I, Robert Joe McSpadden, Petitioner, do hereby certify that a true and correct copy of the above and foregoing PETITIONERS ANSWER to RESPONDENTS OBJECTION to the MAGISTRATE JUDGES REPORT and RECOMMENDATION has been served by placing same in United States Mail, postage prepaid, on this the 10th day of January, 1997, addressed to:

Clerk
United States District Court
Southern District of Texas
500 E. 10th St.
Brownsville, Tx. 78520

and

Jeremy T. Hartman
Asst. Atty. Gen.
P.O.B. 12548
Austin, Tx. 78711-2548

*Robert Joe McSpadden*
Robert Joe McSpadden
Petitioner, Pro se

-3-   095

No. CR-91-887-C

DENIED - 14-9-94

Copy of original
State Habeas Corpus
writ #

26,733-01

Ex Parte

Robert Joe McSpadden 600096

Applicant

v.

THE STATE OF TEXAS

RESPONDENT

IN THE 197 JUDICIAL DISTRICT COURT

United States District Court
Southern District of Texas
FILED

JAN 28 1997

Michael N. Milby
Clerk of Court

OF

CAMERON COUNTY, TEXAS

## Application For Writ Of Habeas Corpus

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Now, Robert Joe McSpadden, applicant in the above styled cause and presents this application for Writ of Habeas Corpus under Tex. Code Crim. Pro. Ann. Art. 11.07(Vernon's 1977). Applicant would respectfully show the Court the following:

I.

### Confinement And Restraint

Applicant is unlawfully confined and restrained of his liberty by James A. Collins, acting in his official capacity as director of the Texas Department Of Criminal Justice-Institutional Division, at the William Clements Unit, pursuant to a judgement of conviction in Cause No. CR-91-887-C in the 197 Judicial District Court of Cameron County, Texas, for the offense of Aggravated Sexual Assault. Punishment was assessed at **Life** in the Texas Department Of Criminal Justice

(1)

096

Institutional Divisi

A copy of the judgement and sentence are unavailable to Applicant, but the original are available to the Court, through the files of the Court Clerk.

The Plea was that of Not Guilty and his Trial was before the Jury, on the 14th day of October, 1991.

(II.

Applicant is a Layman at Law and prays that his Petition be liberally construed by this Honorable Court. The conviction and sentence pursuant to which Applicant is being confinedd was obtained in violation of his Rights under State and U.S. Constitutional Laws in that:

### Ground for Relief 1

Secret Grand Jury denied his Right to confront accuser and witnesses.

### Arguments

LEAHY v. STATE 13 S.W.2d 874, 111 Tex Cr R 570 Accused not permitted to interview witnesses prior to Trial.

### Ground for Relief 2

Never read my 5th Amendment Rights and not allowed to attend my Arraignment.

### Arguments

Allen v. Illinois 478 U.S. 364, 368 (1986). Kastigar v. U.S. 405 U.S. 441, 444-445 (1972). I was never read my Rights nor waived them. Also I was put on the witness stand with no warning, after my Attorney telling me that I wouldn't have to testify.

(2)

097

### Ground for rRelief 3

Insufficient information and preparation by my Attorney prior to Trial. Only 2 hours with me. Ineffective counsel during Trial and erroneous information given.

### Arguments

<u>People v. Robinson</u> 269 P 2d 6, 42 C. 2d 741. <u>State v. Sotelo</u> 679 P 2d 779, 209 Mont 86. My Atorrney spent a total of 2 hours with me prior to Trial and all he really said was "Don't worry they don't have any evidence. I can win this." <u>Dooley v. Petsock</u> 816 F 2d 885, 890-91(3d CIR). During the Trial I pointed out discrepancies but my Attorney said he didn't wan t to be aggressive and turn the Jury against us. <u>Murray v. Carrier</u> 447 U.S. 478,496 (1986)(dictum). When the Court was made aware of people leaving the Courtroom and briefing the witnesses, I was refused a mistrial. The Rule of Witnesses was in effect. <u>Walberg v. Israel</u> 766 F 2d 1071, 1077 (7thCIR) The JUdge and my Attorney had a disagreement at the beginning of the Trial and the Judge remained hostile after that. <u>U.S. v. Lee</u> 818 F 2d 1052, 1055 (2d CIR). There was no presentence investigation prior to sentencing. <u>U.S. v. Rosen</u> 892 F.2d 649, 651n.1(dictum) (7th CIR,99). Variance narrowed scope of Trial charges, therefore inadequate defense preparation, chance of double jeopardy <u>Hill v. Lockhart</u> 474 U.S. 52,59 (1985). My Attorney informed me I had to have a JUry Trial because the Judge couldn't give probation. Also he mentioned the possibility of Shock Probation. This was erroneous information. <u>Ex Parte Kelly</u>,676 S.W. 2d 132(Tex Crim App 1984).

(3)

098

### Ground for Relief 4

Insufficient time to select a Jury. We were only allowed 20 minutes to select from 67 prospetive Jurors. Also a different Judge presided over Voir Dire and swearing in the Jury than preside over the Trial. Also there were several racial remarks made during the selection process.

### Arguments

Swain v. Alabama 380 U.S. 202,219 (1965). Rosales-Lopez v. U.S. 451 U.S. 182,188 (1981). Johnson v. State CT CRIM APP TX 548 S.W. 2d 700 (77). Not proper nor adequate time to interview and select Juores. Not proper make up of Jury. Young mothers, racial imbalance, and racial remarks improperly influenced Jurors.

### Ground for Relief 5

Insufficient evidence to support charges, but Prosecutor Valle instructed the Jury that they could convict on testimony alone.

### Arguments

Ex Parte Barfield 660 S.W. 2d 103 (TEX CRIM APP 1983). Stacy v. Love 679 F 2d 1209, 1213-14 (6th CIR). Mason v. Balcum 669 F 2d 222, 224-26 (5th CIR). Tamapua v. Shimoda 796 F 2d 261, 263 (9th CIR 1986). Physical evidence failed to prove the charge.

### Ground for Relief 6

Witnesses gave no testimony pertinent to the charge and even though Separation of Charges was in effect, I was charged, tried and convicted of 3 different charges against 3 different people with no physical evidence to prove any of them.

(4)

### Arguments

<u>U.S. v. Castro</u> 829 F 2d 1038,1046-47 (11th CIR 1987). After severance of charges, the accusers in the other charges testified about them in this Trial. Therefore I was tried for 3 separate crimes against 3 separate people.

### Ground for Relief 7

State intoduced a surprize witness whose testimony had nothing to do with this Trial. Also presented so called evidence, and I was refused a continuance to obtain rebuttal witnesses or evidence. The Judge stated that we didn't have time, he wanted to finish this Trial.

### Arguments

<u>Ex Parte Salinas</u> 660 S.W. 2d 97(TEX CRIM APP 1983). <u>U.S. v. Bartle</u> 835 F 2d 646,649-50 (6th CIR 1987). State failed to disclose witness until presented for testimony. <u>U.S. v. Jackson</u> 780 F 2d 1305 1311(7th CIR 1986). <u>U.S. v. Wicker</u> 846 F 2d 1059,1061-62 (10th CIR 1988). <u>Cothren v. State</u> S.W. 2d 594,139 TEX CR 644. State refused a continuance to obtain rebuttal witness and evidence. <u>U.S. v. Pinto</u> 850 F 2d 927, 932-33 (2d CIR). Prosecutor Valle alluded to evidence presented by witnesses. Judge refused continuance to allow rebuttal evidence.

### Ground for Relief 8

Prosecutor Valle made several religious remarks, called me names, and led the Jury to believe that my background was falsified.

### Arguments

<u>U.S. v. Martin</u> 815 F 2d 818, 823 (1st CIR). <u>U.S. v. Kessi</u> 868 F 2d 1097,1107 (9th CIR 1989). <u>U.S. v. Friedman</u> 909 F 2d 705,710 (2nd CIR 1990). Prosecutor Valle pointed out my lack of proof (I.D.) for my Army, Paramedic,and Peace Officer backgroud,knowing that I could carry no I.D. Also my jail discard clothes unfavorably influenced the Jury.

(5)

100

### Ground for Relief 9

A couple of days after my Trial I was called to a meeting with Prosecutor Valle and my Attorney. I was informed that they had had a meeting with Judge Hester (who was not the Trial Judge) and that if I didn't sign a petition not to Appeal, they would just make up more dates and try me over and over. Also Judge Hester said he would run all sentences consecutive. I found this to be threatening, intimidating and coersive. My Attorney told me I had better take it. They wouldn't make make so many mistakes in the next ones. Also we had enough for a retrial, so don't worry.

### Arguments

Fontaine v. U.S. 411 U.S. 213, 93 S.Ct 1461 (1973). Due to erroneous information from my Attorney and the threatening nature of the Prosecutor, I had no choice but to sign the petition not to Appeal. But it was signed under duress.

### Ground for Relief 10

Sentence of Life is cruel and unusual punishment. I was never informed that I faced a possible Life sentence. With my background and status as a first offender, the sentence was too drastic. Similar cases I know of: 3 received 5 years, 2 got 7 years, 1 got Shock Probation, and 1 got Deferred Adjudication.

### Ground for Relief 11

All of this is a frame up by my ex-wife, Juanita Corkill, to get even for our divorce and to cover up her burglaries of my house and theft of my property. Crimes for which she hasn't been prosecuted, even though I have reported them to the Police and Sheriff. They refused to investigate or answer my letters. I have witnesses but they won't listen.

## PRAYER

WHERFORE, Premises Considered, Applicant prays that this Honorable Court grant this application and bring applicant before the Court fir a fair and full evidentiary hearing to the end, that upon final hearing, applicant may be released fromm his illegal confinement.

Respectfully Submitted

*Robert Joe McSpadden*

Robert Joe McSpadden

No. 600096

Clements Unit

9801 N.E. 24th Ave.

Amarillo Tx. 79107

(7)

102

## VERIFICATION

I, Robert Joe McSpadden, TDCJ-ID No. 600096, being presently incarcerated in your Clements Unit of the Texas Department of Criminal Justice - Institutional Division in Potter County, Texas, declare under penalty of perjury that I am the applicant in this above and foregoing Petition. I have read, said Petition and the factual allegations of the same are true and correct to the best of my knowledge.

Executed on this the
<u>23rd</u> day of April, 1994

*Robert Joe McSpadden*

Robert Joe McSpadden
Applicant

(8)

103

Dear Ladies and Gentlemen!  15 Dec. 96

I believe that you are an understanding persons and I am writing that letter, and, first, I would like to tell about myself a little to know about the writing person.
My name is Milyausha Khabriyalova. I am 36, am living in Ufa, Russia, and am working at the library.
My mother was a wonderful woman. She had the cancerous tumour of the liver and died in 1989. It is very hard to remember till now her cruel death..
My father spent a few years in European war 1941-1945. He died this year January, 19, 1996 after sickness... They brought their two children in rules: to be truthful honest persons, respect parents, have a kind heart. Now when both of my parents are dead, it is so hard for me, because I was so close with my parents, but, I need to remember all of the time that, of course, life must go on.
I can say, that my religion is kindness, in help the others. I am an understanding sensitive woman, and I do my best not to hurt anyone.
As a librarians we tell, especially to the youth at schools, about European war 1941-1945, about the cruel wars at all. We tell about concrete persons in war, their a very hard position there, but, they served their Country. And I know one a very important thing, also, from my father, too, that the U.S.A. were the main allies during the Second World war, that today the most intimate people for the Russians are the Americans, because they are a very friendly folk. Also I feel that in the letters of my Pen Pals from the U.S.A. now, too.
I am glad to have a few Pen Pals from your Country, too. Some of them look so fine, but, I would like to tell the story about one of them.
His name is Robert Joe McSpadden. He is 53 now. We are from two different cultures, but, we think a lot of alike and understand each other very well. Now he is in a very hard position. I would like to help him in his trouble, because he spent a few years in war like my father, too He was in hard position in the past, but, he served his Country He is in hard position again and needs help, but, none is there to help him now.
That is the hard part, he spent almost 21 years in the Army (3 years in Viet Nam). He was a policeman for 15 years and paramedic for 12 year He served his Country for over 35 years and now when he needs help none is there to serve him. It is very depressing and frustrating.
He married the wrong person and now he is paying for her revenge. She was a money hungry person and when she did not get anything in their divorce she got mad, framed him and stole his property. He is in prison now. The problem is that she knows the important people and they will not do anything to her for it. But, he can prove his innocence and he can also prove that she stole his property. He has all the evidence he needs to clear himself.
I know that he is not a criminal, and so, I am with him 3 years in my letters.
He was framed by his ex-wife. Only so she could steal his property. She did not get anything in their divorce, so she had his locked up an then she and her boyfriend broke into his house and stole or destroyed his property. He has the evidence to prove it. He needs to get it into Court to clear his name. His case is in Appeals Court now, but, they take a long time.
It is really hard not having someone outside to help him for his release. He has to do it all himself, but, he is alone person, he is a prisoner, no matter that he served his Country for over 35 years.
That is the hard part, he did not do anything, but, he is in prison, she stole his property, and she is free.
All he needs is a fair trial to get out of prison. It is very important to him and to me, too, to get to believe him and to clear his name.

104

I am writing to ask for your understanding and assistance in righting a terrible wrong and also a miscarriage of justice. Why have we Universal Declaration of Human Rights of 10 December 1948.-UNO, Clauses: 2,6,7,8,10,11,12?

        Sincerely,
         Milyausha.

Milyausha Khabriyalova
Flat 9, House 51,
Naberezhnaya St.,
Ufa, 450105, Russia.

P.S.: I am enclosing copy of his letter to President Bill Clinton. I do not want us to stand and say near his grave: "Sorry, friend, it was a miscarriage of justice", but, it is too late yet...

United States District Court
Southern District of Texas
RECEIVED
JAN 3 1997
Michael N. Milby, Clerk of Court

Dear President Clinton:                                          6 Aug 96

I am still in dire need of assistance and/or intervention. I have now been incarcerated for 5 years for a crime I never committed. I have tried going through the Court system to solve this problem, however, the people that framed me, have influential friends and are blocking or delaying my every effort for justice. My ex-wife Juanita Urbina Carmona Corkill, her father Antonio Urbina, daughter Teresa Carmona, and my daughter Melanie, framed me to cover up their thefts of my property and as retribution for a divorce. My attorney, Robert J.Banks had conflicting interests in handling my case and bungled it terribly. My Constitutional Rights to a fair and impartial trial were compromised and circumvented and I was given Life in prison for something I didn't do. **The physical evidence proves I couldn't have done it. Convicted on perjured testimony only, tried for 3 crimes!**

The Courts and the State are dragging their feet and delaying my hearing and extending my stay in prison. I first filed in Aug. 93 and immediately the State started their delays, this has now gone on for 3 years, when the Court could have studied the record of my trial and seen the violations and lack of evidence and reversed my sentence and released me from this madness. The State had 3 years to present their case but didn't and delayed it by not submitting the proper papers to the Court so they could make their decision. Then the Court gave them an additional 11 Months to submit and discover their case. Meanwhile I am incarcerated and at their mercy, (for which they are not known to possess). Why would the Court leave me here and give the State so much more time? Why have Constitutional Rights if they can so easily be violated and a person be incarcerated for so long while the State and the Court take so long to study it and make their decision? My cases are B-93-217 and B-94-298 Habeas Corpus action, filed in the Federal District Court in Brownsville,Tx.78520.

Sir, I spent 35 years of my life serving my Country,State and Community. I served 20½ years in the Army (3 in Viet Nam), **the President gave the ones that didn't, amnesty!** I served 12 years as a Paramedic and 15 Years as a Police Officer, working long hours and for low pay, only for the satisfaction of helping people.

On 13 Mar 96 there was a telephonic conference with all parties concerned, and the State said they needed more time because they were changing the asst. A.G. on the case. The Judge gave them 11 months to get their case together, (although they already had 3 years) the problem is that as of this date, they haven't done a thing. They haven't appointed another asst.A.G. or made any attempt at discovery. so, the only thing that has happened is that I am still in prison and time is passing and that is all. Constitutional Rights mean nothing if I can spend 5 years in prison for a crime I didn't commit.

All I want is for someone to care about justice,Rights and me. No preliminary hearing, not permitted to attend arraignment and **Habeas Corpus supposed to receive prompt Court action.**

**The President of the United States and the Governor of the State of Texas has the power to grant: a Pardon, Amnesty, Clemency, and/or Commutation!**

                                                            Sincerely

Robert Joe McSpadden
600096  Clements Unit
9601 Spur 591
Amarillo, Tx. 79107-9606

105

# Brush with system changes local man

By CYNTHIA PUCKETT
Globe-News Staff Writer

An Amarillo man said he now has a different view of people who have been charged, but not convicted, of a crime.

Jared Wayne Swopes, 21, said that after his own brush with the legal justice system, he's more prepared to see people as innocent until proven guilty in a court of law.

Swopes was preparing to move from San Antonio back to Amarillo the morning of Sept. 8. That morning, a teacher was being attacked in her classroom nearby.

Theresa Smith, 26, said that a man grabbed her from behind just before 7 a.m., held a knife to her neck and forced her to her knees, a San Antonio police report said.

Smith said the man took $13 and a gold watch, and ripped her underwear in an attempt to rape her. Smith screamed and ran to an adjoining classroom. A teacher there ran after the attacker, who had fled into the dark. Neither teacher got a good look at the assailant's face, the report said.

Police later spotted Swopes, who matched the description of the attacker, at a nearby apartment complex. Swopes was arrested and held until 11 p.m., when he was freed on a $15,000 bond, records show.

Swopes said he told police he was across town during the robbery. He had gone to pick up a trailer from his boss's business and stopped for gas. Swopes was back at his apartment loading a trailer when police approached him.

"A cop came up and said there had been a problem at the school and said they needed me to go there for an ID check. The cop said she didn't think it was me because I wasn't sweaty," Swopes said.

Neither of the teachers recognized Swopes until he was asked to get out of the patrol car. Then the other teacher fingered Swopes as Smith's attacker because of the purple shorts Swopes was wearing, Swopes said.

Swopes gave the officers permission to search his vehicle and apartment. Police ransacked the apartment but did not find a knife or any other items involved in the alleged attack, Swopes and the police report said. San Antonio Police Detective O.J. Snavely said police were relying on a description given by the teacher who saw the attacker running from the scene when they made the arrest.

Swopes said he was taken to the police station and held without being told what charges were filed against him. Swopes said he spent hours answering embarrassing questions and being chided by police officers about his sexual experiences, feelings and dreams, not knowing what crime police were trying to solve.

Swopes was charged with aggravated robbery. A photograph of Swopes in handcuffs was printed on the front page of the paper along with the story of his arrest.

Snavely said police eventually cleared Swopes.

"He had a credible alibi and the witnesses' identification was not as good as we thought it was at the time," Snavely said.

The SAPD now is looking at other suspects in the case, he said. Swopes' mother, Nelva Swopes of Amarillo, said her family has spent about $3,000 because of the arrest and will probably not be able to recover any of the money, including the $2,250 they paid to a San Antonio bonding company for Jared Swopes' release.

San Antonio prosecutor Laura Parker said it was Swopes' choice to post bond through a bonding company. Swopes had the option of posting the $15,000 bond in cash or sit in jail until the charges were dropped or the case went to trial, Parker said.

Swopes said that on one trip to San Antonio on Oct. 23, he took lie detector tests. Snavely said the three tests proved inconclusive. Although Swopes volunteered for the tests, the officer didn't tell him that the robbery charge had been dropped Oct. 10, Swopes said. Swopes later learned of that through a friend.

Parker said she rejected the case when officers presented it to the district attorney's office because the identification of Swopes was not sufficient, compared to Swopes' alibi.

"When we checked his story, that he had gone to work and bought gas, we knew it was physically impossible for him to be where the crime occurred," Parker said.

Swopes said he's learned a painful lesson about the Texas justice system and no longer will assume that people who are arrested as suspects and portrayed in the media are guilty.

"When I would see someone arrested for something, I would think they are getting someone bad off the streets, but I never thought that maybe they didn't do it."

Swopes said he has been told his record now carries information about his arrest, but not about the charges being dropped. A lawyer told him it will cost about $1,500 to get his record cleared.

Nelva Swopes said her son's case has cost the family not only money, but also pain and grief. "It definitely has controlled our lives over the last few months."

106

# Texas leads ration in record increase in prison numbers

**By LORI MONTGOMERY**
Knight-Ridder News Service

WASHINGTON — The U.S. prison population, which broke the 1 million mark in 1993, climbed to more than 1.1 million in state and federal prisons — the largest population increase since record-keeping began in 1923.

A report released Sunday by the U.S. Department of Justice said the number of Americans behind bars jumped by nearly 90,000 during the 12 months ending in June, topping the largest previous one-year increase of 85,000 in 1989.

Some criminal justice experts moaned the news, warning that the nation is slaking a thirst for punishment at the expense of programs that could stop crimes before they happen. But others pointed to dramatically lower murder rates recorded last year in many of America's largest cities and argued that the tough policies of the past decade are working.

"Am I shocked and outraged that you've got a 90,000 increase? No. I'm very unalarmed by that," said Robert Bidinotto, author of a recently released book, "Criminal Justice? The Legal System vs. Individual Responsibility." "We are now scooping up the repeat and violent offenders that have been getting away for so long."

Justice Department officials said the growth spurt reflects the continuation of a national trend toward harsher punishment for violent criminals, and drug offenders, who are increasingly likely to be sentenced to prison rather than released on probation.

It also reflects an increasing willingness among state officials to build more prisons. Texas accounted for the bulk of new inmates nationally, adding 34,000 felons to its prisons between June 1994, and June 1995, according to the Justice Department report. The state has spent $2 billion to construct 100,000 new prison beds since 1990 and is challenging California for title to the world's largest prison system.

Michigan claims the nation's sixth-largest prison population, with about 41,000 inmates. The state, which last opened a new prison in early 1994, had one of the 10 slowest-growing prison populations during the period studied, increasing by only 3 percent.

Washington, D.C., leads five jurisdictions that reported falling prison populations. The number of inmates in the District of Columbia's prison in Lorton, Va., dropped by 5 percent to about 10,500 during the period studied, the report said.

Allen Beck, chief of corrections statistics for the Justice Department's Bureau of Justice Statistics, said his agency does not yet have sufficient information to explain why the number of inmates grew so much this year. In general, the nation's spiralling prison population is driven primarily by an increasing number of violent criminals behind bars, Beck said.

Since 1980, as state prison populations have more than tripled, criminals serving time for violent crimes accounted for nearly half the increase; felons convicted of drug crimes have accounted for about a third, Beck said.

But that analysis diminishes the importance of the war on drugs, which most criminal justice experts describe as the single most important factor in rising rates of incarceration. The number of people incarcerated for drug crimes has grown far more rapidly than criminals locked up for any other reason, with drug offenders jumping from 8 percent of all state inmates in 1980 to more than a quarter of all state inmates today. At the same time, violent criminals occupy a decreasing share of prison cells, dropping from 57 percent in 1980 to about 45 percent today.

The transformation has been even more dramatic in the federal prison system, where drug offenders have increased 1,000 percent since 1980 and now comprise more than half of all federal inmates, Beck said.

The issue is especially significant in light of an independent study that recently found one in three black men in their 20s under control of the criminal justice system, a dramatic increase from five years ago, when about a quarter of young black men were either in prison or jail or on probation or parole.

# Justice system goes a[wry]

Most of us appreciate a good story. We find a story even more compelling when it involves someone we know or one of our peers. Texas justice has produced many such stories, especially [during] the past decade. The light of freedom has shone on one after another who were wrongfully condemned to the [ultimate penalty of prison]. Their names are familiar: Randall Dale Adams, Clarence Brandley, Joyce Ann Brown, Lenell Geter and [Michael] Anthony [Voten], to mention a few.

Though each story is incredible, they are also tragic far beyond the immediate wrong endured by each person. Even after being proven innocent and released, the blight of all felons follows them. A sinister "EX" hangs over their heads and lingers outside society's ability, or willingness, to disregard. Sadly, whether guilty or innocent, once criminal justice sinks its iron talons, every affected person is branded and forced to endure a lifetime of proving himself worthy.

The Echo printed an excellent example last year of the continued need to "prove." A newspaper column discussed the ten year anniversary of Lenell Geter's release from wrongful incarceration. Mr. Geter was convicted in Dallas of robbery, even though many of his coworkers testified that he was at work when the robbery occurred. What caught columnist Steve Blow's attention (and struck me as pathetic) was that Lenell Geter evidently felt a need to prepare a news release a decade after his vindication. It seemed a doleful attempt to assure doubtful minds that he is doing well.

How sad that a man who did no wrong should now reside in another state yet still feel compelled to offer proof of his upright [life] to Texas. The bright side, I suppose, [is that] the decade of proof is indeed there, [to mollify] the doubtful minds which so ardently embrace a lock-'em-up attitude.

In addition to those lucky ones released, [others undoubtedly suffered undeserved prison sentences recently. Based upon those] fantastically fortunate few who were able to [clear themselves, there must remain]...

[Michael] Anthony [Voten] was convicted in Dallas of aggravated robbery and given a 35-year prison sentence. He was eventually proven innocent and the governor issued the first-ever Texas pardon based on absolute innocence.

Tony was identified by employees of [three] separate supermarkets in Dallas as one of a pair who were dubbed "The Cowboy Bandits" by the media. Tony was able to provide ironclad alibis that exonerated him from only two of the three.

At the time of the third robbery, [Tony] claimed to have been en route to St. Louis. He said his car broke down north of Dallas and he hitched a ride with a trucker. The problem was, Tony didn't know the trucker's name. He only remembered his CB handle, Kangaroo. He didn't know the company the trucker drove for.

Tony claimed that he rode as far as Kansas City with the mysterious trucker. His only proof of being with the phantom driver at the time of the robbery was recalling a stop for fuel just north of Oklahoma City. He clearly remembered that the driver purchased precisely one hundred dollars worth of fuel. He told his story and got an aggravated double-nickel for his efforts.

After eight years of hard time, Tony was talking with another inmate about the Cowboy Bandits. He mentioned that one of the band had been killed by a SWAT team prior to his trial. The second bandit had gotten away. Another inmate overheard the slain man's name. The man who happened to hear that familiar name replied, "I'm the only man who ever robbed with Charlie Harden."

Tony learned that he had been on the same unit with the surviving Cowboy Bandit for five of the past eight years. Armed with the real bandit's willing confession, a hundred print media were contacted in attempt to secure help in further proving Tony's innocence. [One of those contacted was The Echo.] [Echo's] special editor, Ray Herndon, was assigned to the story. Herndon quickly determined that Tony...

| Pardons and |  |
|---|---|
| REGION & HEADQUARTERS |  |
| 1 | Dallas ........ |
| 2 | Houston ........ |
| 3 | San Antonio |
| 4 | Midland ........ |
| 5 | Fort Worth ..... |
| 6 | Angleton ........ |
| 7 | Tyler ........... |
| 8 | Waco ........... |
| STATEWIDE | ........... |

\* These figures do no[t]
These figures do no[t]

# ...th tragic consequences

...not be in prison. He located Kanga-
roo. Kangaroo clearly remembered the hitch-
hiker, Herndon and a Dallas policeman went
to Kansas City and dug through stored records
of Kangaroo's... trucking company until
they located a fuel receipt issued the date of
the Dallas robbery. The receipt was from a
truck stop just north of Oklahoma City, for
precisely one hundred dollars worth of fuel,
signed by Kangaroo.

Armed with hard proof of innocence,
Herndon and Dallas law enforcement peti-

*...cased eight miserable years for a
time he had nothing to do with.*

tioned the Board of Pardons and Paroles to
request that the governor issue an uncondi-
tional pardon.

She did. On Valentine's Day, 1990, Tony
was finally equal to his freedom.

Tony was caged eight miserable years for
a crime he had nothing to do with. He lost
the same things that any convicted felon
loses: his wife, his children, his home, his
career and his material possessions. Still, he
never lost his dignity. This Valentine's Day
will mark the five-year anniversary of Tony's
release, but he'll send no news releases to
try convincing Texas he is doing well. He can't.

Tony Woten was my best friend. I met him
in prison and I served those eight years with

him. I've visited him regularly since his release.
He was beyond doubt the most righteous,
worthy, dependable and honorable one could
hope to have, in or out of prison. I'm compelled
to remember his conviction as well.

After his release he soon found a job, married
his longtime pen pal and adopted her young
son. He worked the job that, in his news release,
some of the eight-year loss. His news release,
were he able to issue one, would indeed read
well. He was a good man before prison; he
was a good man in prison, he was a good man
after prison. He honored his word and re-
membered his friends.

Eight months earlier after release from
eight interminable years, Tony stopped off
after work to deliver a video he'd promised
his adopted son. A few minutes later, en route
to his second job, Tony was killed in a one-car
accident.

Perhaps it is a good idea that all wrong-
ful convictions should be remembered in the
media or on and everywhere. These stories
serve as reminders that no justice system is
perfect. Many innocents suffer the
injustice of incarceration and the indignity
that prison brings. Beyond that, society
should be reminded that penitentiaries in-
flict scars on all those who enter the razor-
topped fences. With this in mind, maybe a
few would stop to consider consequences
instead of the knee-jerk reaction of incarcera-
tion so common in our communities.

## Parole — Distribution of Cases Statewide

| OFFICERS | COUNTIES COVERED | CASES UNDER SUPERVISION | AVERAGE CASELOAD |
|---|---|---|---|
| ... | 1 | 12,155 | 64 |
| 191 | 1 | 13,378 | 71 |
| 252 | 1 | 8,721 | 63 |
| 133 | 46 | 5,389 | 63 |
| 86 | 82 | 8,527 | 66 |
| 129 | 24 | 4,314 | 70 |
| 62 | 23 | 6,345 | 71 |
| ... | 37 | 7,028 | 68 |
| 103 | 40 | 71,057 | 67 |
| 7,350 | 254 | | |

*Include Annual Report Cases nor cases assigned to PPD Central Office.*
*Include Community Services Officer Cases.*