55

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 07 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ROBERT JOE McSPADDEN, § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. B-94-289 |
| § | |
| GARY L. JOHNSON, DIRECTOR, § | |
| TEXAS DEPARTMENT OF CRIMINAL § | |
| JUSTICE, INSTITUTIONAL DIVISION, § | |
| Respondent, § | |

**RESPONDENT'S RESPONSE TO PETITIONER'S BRIEF**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Gary L. Johnson, Director of the Institutional Division, Texas Department of Criminal Justice, Respondent herein, hereinafter "the Director," by and through his attorney, the Attorney General of Texas, and files this **Respondent Johnson's Response to Petitioner's Brief**. In support thereof, the Director would respectfully show the court the following:

**I.**

**JURISDICTION**

This court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. §§ 2241, 2254.

**II.**

**DENIAL**

The Director denies each and every allegation of fact made by Petitioner, hereinafter "McSpadden," except those supported by the record and those specifically admitted herein.

## III.

## STATEMENT OF THE CASE

The Director has lawful and valid custody of McSpadden pursuant to a judgment and sentence of the 107th District Court of Cameron County styled *The State of Texas v. Robert McSpadden*, Cause No. 91-CR-887-C. McSpadden pleaded not guilty to the indictment and was convicted by a jury of the felony offense of aggravated sexual assault of a child. On October 17, 1991, the jury assessed punishment at life confinement in the Texas Department of Criminal Justice, Institutional Division.

McSpadden did not appeal his conviction. He waived appeal as part of a deal to dismiss other cases that were pending against him. He has filed one application for writ of habeas corpus in state court. The state habeas application was denied without written order on September 14, 1993. *Ex parte McSpadden*, Appl. No. 26,733-01 at cover.

McSpadden also has an additional federal habeas application pending before this court.

## IV.

## STATE COURT RECORDS

Records of the state habeas corpus application have previously been forwarded to the court. The trial record is available

## V.

## EXHAUSTION OF STATE COURT REMEDIES

The director believes that McSpadden has not sufficiently exhausted his state remedies as required by 28 U.S.C. § 2254(b) and (c). This court has previously denied one motion to dismiss for failure to exhaust state court remedies. The Director does not waive his previous complaints regarding the exhaustion of state court remedies. Now more unexhausted facts and claims have been introduced into this case in McSpadden's latest brief.

Previously, McSpadden's claims in his federal writ were as follows:

1.     He was denied due process because:

2

A.  He was not allowed to attend arraignment,

B.  He was only given twenty minutes to conduct voir dire,

C.  The rule of witnesses was in effect but the witnesses were briefed all through the trial,

D.  He was not allowed a continuance to offer rebuttal evidence,

E.  He was tried for several offenses in one trial and then waived appeal in exchange for dismissal of the cases upon which he had already been tried.

2.  He was denied effective assistance of counsel because counsel:

    A.  only spent two hours with McSpadden prior to trial,

    B.  failed to contact all witnesses,

    C.  failed to do any investigation,

    D.  failed to interview all of the state's witnesses,

    E.  was inadequate in his preparation and gave incorrect advice,

    F.  failed to act on McSpadden's questions and errors that McSpadden pointed out,

    G.  gave no advice at the post-trial meeting with the District Attorney.

3.  He was the victim of prosecutorial misconduct in that:

    A.  The prosecutor made racial and religious remarks during voir dire,

    B.  The jury was allowed to see McSpadden locked up,

    C.  The prosecutor asked McSpadden about being in the army, being a paramedic, and being a peace officer, knowing that he had no identification,

    D.  The prosecutor produced a surprise witness and alluded to evidence that McSpadden was not allowed to rebut,

    E.  The prosecutor made inflammatory remarks and called McSpadden names during closing argument.

The claims raised in McSpadden's state writ application are as follows:

1. The secret grand jury denied him his right to confront his accuser and the witnesses against him;

2. He was never read his fifth amendment rights nor allowed to attend his arraignment;

3. Trial counsel was ineffective because

    a. He only spent two hours with McSpadden;

    b. He did not act upon "discrepancies" McSpadden pointed out to him at trial;

    c. He was denied a mistrial when people violated "the Rule;"

    d. The judge was hostile to trial counsel after a disagreement;

    e. There was no presentence investigation prior to sentencing;

    f. A variance narrowed the scope of charges, therefore there was adequate defense preparation and a chance of double jeopardy;

    g. He told McSpadden that they had to go to the judge to get probation, and that there was a chance of shock probation, which turned out to be erroneous;

4. There was only 20 minutes allotted for voir dire; a different judge presided over voir dire than presided over the trial; there were several racial remarks made during the jury selection process;

5. There was insufficient evidence to convict McSpadden, but prosecutor Valle argued the jury could convict on testimony alone;

6. Witnesses gave no information pertinent to the charge and he was convicted on three different charges;

7. State introduced a "surprise witness" and he was refused a continuance to obtain rebuttal evidence;

8. Prosecutor Valle made religious remarks, called him names, and led the jury to believe that MsSpadden's background was falsified;

9. McSpadden was intimidated into waiving his appeal when he met with trial counsel and Valle and was told that he would be tried on other cases and the sentences stacked;

4

10. A life sentence was cruel and unusual punishment for this offense;

11. This case was a frame-up by his ex-wife, Juanita Corkill, so that after the trial she could burglarize his house and steal his property.

The claims raised in the state writ application are the only claims that are exhausted; however, there are virtually no facts alleged in support that are not conclusory allegations. Arguably, of the allegations addressed in Petitioner's brief, only claims 2, 11, and 14 in Section VI, *infra*, have been raised previously before this court. Only claims 10, 11 and 14 were previously raised, more or less, in the state writ application. All new claims and any new factual allegations are unexhausted and procedurally defaulted.

## VI.

### PETITIONER'S LATEST ALLEGATIONS

As grounds for relief, the Director understands McSpadden to allege in his brief that:

1. His trial was unfair as demonstrated by an overview of the cross-examination of McSpadden;

2. Trial counsel was ineffective for failing to do an adequate pretrial investigation;

3. Trial counsel was ineffective for allowing the trial court to strike a potential juror for cause who inquired about the race of the child victim;

4. Trial counsel was ineffective for failing to argue specific facts in his opening statement;

5. Trial counsel was ineffective for failing to recall Dr. Stanley Fisch to further impeach the complaining witness;

6. Trial counsel failed to avail himself of learned treatises available to him at the time of trial;

7. Trial counsel failed to call an expert regarding suggestive influences on child victim's testimony;

5

8. Trial counsel failed to correctly cross-examine the state's expert witness psychologist or qualify his own mental health expert as an expert witness;

9. Trial counsel failed to advise him of the hazards of testifying in his own behalf;

10. Trial counsel was ineffective for failing to move for a mistrial;

11. A witness who violated "the Rule" was allowed to testify;

12. Trial counsel failed to object to objectionable final argument by the prosecution;

13. Trial counsel failed to present mitigating evidence at punishment;

14. Trial counsel was ineffective for allowing the prosecutor to intimidate McSpadden into waiving his appeal;

15. McSpadden can demonstrate cause and prejudice for procedurally defaulting most of his claims; and

16. McSpadden's trial constitutes a fundamental miscarriage of justice because the prosecutor threatened McSpadden into waiving his appeal, the trial judge was only a county court at law judge and not qualified to try the case, and the outcry witness was the prosecutor's daughter.

## VII.

### STANDARD OF REVIEW

Under the 1996 amendments to the federal habeas corpus statute embodied in the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), which took effect April 24, 1996, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

28 U.S.C. § 2254(d) (West 2000).

A decision is contrary to clearly establish federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court on a set of materially indistinguishable facts." *Williams v. Taylor,* 120 S. Ct. 1495, 1522 (2000), quoted in *Hill v. Johnson,* 210 F.3d 481 (5th Cir. 2000).

Moreover, "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor, id.* "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* An "unreasonable application" occurs "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 1523.

In review of a state prisoner's federal habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption by clear and convincing evidence." § 2254(e)(1); *Jackson v. Johnson,* 150 F.3d 520, 524 (5th Cir. 1998). Moreover, where the petitioner

> has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
>
> (A) the claim relies on
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense . . . ."

7

28 U.S.C. § 2254(e) (2).

Thus, in the state courts a petitioner "must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met." *Williams v. Taylor*, 120 S. Ct. 1479, 1491 (2000).

## VIII.
## RESPONDENT'S RESPONSE TO PETITIONER'S BRIEF

1. **McSpadden's claim that his trial was unfair as demonstrated by an overview of the cross examination of Mr. McSpadden:[1]**

McSpadden first claims that he was unable to gather documentation that would have prevented his impeachment from the stand because his lawyer made no effort to obtain them. This is a conclusory allegation. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir.1983), "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." While there was an allegation in the state writ that the prosecutor led the jury to believe that his background was falsified, this is the first time that it has been alleged that this was because of some failure on defense counsel's part. In fact, McSpadden testified at trial that he was unable to obtain the papers relating to his military service because his ex-wife had stolen them. 3 SF 57. This claim is unexhausted and procedurally defaulted..

McSpadden did not raise in either his state or federal writs that trial counsel failed to advise him of the risks of testifying in his own behalf. This allegation is unexhausted and procedurally defaulted. This is also a conclusory allegation.

---

[1] For ease of understanding, and not because he agrees with Petitioner, the Director is using the same subject headings used by Petitioner. A couple of these captions, which are taken directly from McSpadden's brief, do not seem to correspond with the all of the material that follows them.

8

The allegation that his trial was unfair because the first person the victim told was the prosecutor's daughter has never been previously raised, making it unexhausted and procedurally defaulted. There is no need for a hearing to answer any questions about why Alexis Valle, a child, was not called as the outcry witness because 38.072 of the Texas Code of Criminal Procedure requires that the outcry witness be at least 18 years of age. The State proved up Nancy Rayme as the outcry witness. 2 SF 115. It was also established at trial that Alexis Valle was a "kid," one of several Sheri Corkill told about the rape. 2 SF 153. Alexis could not have been an outcry witness because she was not 18 or older; nor was she any kind of a witness at trial.

Nor is a hearing required to determine whether the prosecutor had a good faith basis for questioning McSpadden's military record. McSpadden presently bears the burden of proof on this issue, and has produced no evidence to support his claim regarding his military record, making this yet another conclusory allegation. At trial, McSpadden told the fantastic story that his ex-wife and stolen his military certificates. 3 SF 57. Also at trial, he presented the testimony of Colonel Edward L. Pace in support of his claims regarding his military service. 3 SF 76-77. Even if McSpadden were to produce new evidence in support of his claim at the time, it would be too late, because he did not present this evidence to the state courts.

Nor did the state courts hear McSpadden's complaint that evidence of extraneous offenses came in at guilt/innocence. This factual allegation is also unexhausted and procedurally defaulted. Additionally, Keri Carmona and Melanie McSpadden were called in as rebuttal witnesses after McSpadden opened the door by denying his guilt and by claiming that Sheri, Teri, Keri, and Melanie had all denied being sexually abused by him. 3 SF 30. McSpadden denied that he ever had sex with Sheri. 3 SF 39. McSpadden denied that he had ever had sexual contact with Keri. 3 SF 43. McSpadden denied making sexual advances toward Melanie and claimed that their relationship was really good. 3 SF 45. An objection to their testimony would have been futile. Trial counsel cannot be faulted for failing to lodge a futile objection. *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984).

9

McSpadden's claim that Valle was a witness to the color of McSpadden's pubic hair is unexhausted and procedurally defaulted. Additionally, Valle merely stated that McSpadden had white hairs, not white pubic hair. 3 SF 50. McSpadden denied on the stand having any white pubic hair. McSpadden's claim that Valle injected race into the case-in-chief is likewise unexhausted and procedurally defaulted. Additionally, his assertion that the phrase "Mexican maids" was injected into the trial by the prosecutor is untrue. It is McSpadden who inject this phrase into the trial. 3 SF 23.

McSpadden's claim that his cross-examination was unfair is raised for the first time in his brief, making it unexhausted and procedurally defaulted. While he claims in his state writ application that the prosecutor called him names, he offered the state court no specific facts in the support of his claim. The prosecutor's reference to McSpadden as a "Mr. Rambo type" was objected to and the objection was sustained. 3 SF 41. Later references to him as "Mr. Strong Physical Person" and "Mr. Macho Man" were also objected to and the objection sustained. 3 SF 70. Conversely, McSpadden admitted to beating his wife, being mean to his wife's children, and calling them "lazy bums" and "pigs," and forcing them to do all the housework. 3 SF 26, 29. All these are, arguably, much worse than the mild epithets used by Valle.

2. **Legal authority demonstrating error created by the cross-examination of Mr. McSpadden:**

McSpadden's citation to *Walker v. Davis*, 840 F.2d 834 (11th Cir. 1988), is inapposite because the prosecutor in this case never made himself a fact witness. Similarly, the cases relating to the failure to object to extraneous offenses are inapposite because the extraneous offense testimony was invited by McSpadden's denials that he had ever abuse Juanita Corkill's three daughter's or his own biological daughter, and his assertions that he had a good relationship with his daughter when, in fact, she wished him dead because she was raped by her own father.

3. **Pretrial ineffectiveness:**

Here McSpadden offers several claims of "pretrial ineffectiveness:" Banks interviewed only one government witness before trial (conclusory, unexhausted); Banks spent minimal time discussing

10

the case with him (conclusory); Banks failed to investigate possible conflict relating to prosecutor Valle's daughter being the "true outcry witness" (unexhausted, conclusory, assumes Joe Valle's daughter is the true outcry witness when it is clear from the trial record that she is not); and failed to interview exculpatory witness Jane Wright (unexhausted, conclusory).

McSpadden's claim of uncalled witnesses should be dismissed as a conclusory allegation. *Ross v. Estelle*, 694 F.2d at 1011.[2] First, McSpadden has not supplied the state courts or this court with affidavits regarding the substance of the uncalled witnesses' testimony. "Where the only evidence of a missing witness' testimony is from the defendant, this Court [Fifth Circuit] views claims of ineffective assistance with great caution." *See Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986), *citing Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985); *see also United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (Cockrell failed to produce the affidavit of the uncalled witness). Second, McSpadden has not proved that any of the uncalled witnesses would have appeared at trial and testified. "In order for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985), *citing Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981); *Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir.), *cert. denied*, 469 U.S. 1041, 105 S.Ct. 524 (1984). Finally, "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."

---

[2] Ross alleged ineffective assistance of counsel because trial counsel failed to investigate and interview his wife. Ross alleged that his wife would have supplied defense counsel with an alibi defense. However, the Fifth Circuit held:
> We point out, however, that there is no basis existing anywhere in the record-save Ross' statement in his pro se brief-which supports his assertion as to what his wife would have testified to. Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.

11

*See Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir. 1981) *quoting Buckelew v. United States,* 575 F.2d 515, 521 (5th Cir. 1978). Further, the Fifth Circuit has held that "[H]ypothetical or theoretical testimony will not justify the issuance of a writ. . ." *See Martin v. McCotter,* 796 F.2d 813, 819 (5th Cir. 1986), *quoting Larsen v. Maggio,* 736 F.2d 215, 218 (5th Cir.), *cert. denied,* 469 U.S. 1089, 105 S.Ct. 598 (1984). Since McSpadden has not overcome the presumption that the "challenged action 'might be considered sound trial strategy,'" *Strickland,* 466 at 689, 104 S.Ct. at 2065, he cannot satisfy his burden of proof.

In summary, McSpadden's allegation of ineffectiveness should be dismissed as conclusory because he has not supplied any court with the testimonial affidavits of the uncalled witnesses; he has not proven that the uncalled witnesses would have appeared and testified favorably to his case; and trial counsel's actions in not calling these witnesses is presumed to be strategical in nature and McSpadden has not overcome this presumption.[3]

4.  **Trial counsel's voir dire related ineffectiveness:**

It is unclear why Banks allowing a potential juror who inquired into the race of the child victim to be struck for cause was ineffective. If these were the "racial remarks" made at voir dire referred to in McSpadden's state writ application, it looks like the problem was resolved. To the extent that there is no record on this issue, it is McSpadden's fault, who waived appeal in order to escape prosecution and consecutive sentencing in two other cases. Counsel's had no obligation to "protect" McSpadden by ensuring that there was a copy of the record when McSpadden had waived appeal. The cases McSpadden cites stating that failure to produce the record pursuant to a timely request results in reversal are direct appeal cases which do not apply to state habeas.

---

[3] An attempt by McSpadden to supply the affidavits of the uncalled witnesses in this action will result in the state filing a motion to dismiss for failure to exhaust state court remedies. The state makes this statement at this juncture to put McSpadden on notice and to properly assert exhaustion during the district court proceedings, at the first available opportunity.

5.   **Opening statement ineffectiveness:**

This is the first time a complaint has been raised that trial counsel was ineffective for failing to argue specific facts in his opening statement, making this claim unexhausted and procedurally defaulted. There is nothing under Texas law that requires trial counsel to make an opening statement.

6.   **Defense expert ineffectiveness:**

**Pediatric expert testimony.** Again, this claim is unexhausted and procedurally defaulted. Here McSpadden appears to claim that trial counsel was ineffective for failing to call Dr. Fisch as a rebuttal witness. However, to the extent that Dr. Fisch's testimony may have contradicted the complaining witness, that should already have been apparent to the jury. They did not need to hear it twice. Additionally, while Dr. Fisch testified that there was an opening in the hymenal web, 2 SF 23; he also testified that the hymen may or may not completely cover the vaginal opening, and that variations, such as that observed in the victim, were normal, and may or may not have been indicative of penetration. 2 SF 24-25. Therefore, as Banks noted, the evidence helped him as much as it hurt him. All Dr. Fisch was willing to say is that Sheri Corkill might have been a victim of sexual abuse. He testified on cross that "Well, as I indicated, it can be a normal anatomical situation. That can be just how a normal girl's hymen is built." 3 SF 28.

McSpadden attaches "learned treatises" to his brief in support of his claim. He states that they were available at the time of trial. This demonstrates that they were also available at the time the state writ was filed. The information contained therein is unexhausted and procedurally defaulted.

**Expert regarding suggestive influence on children's victim testimony.** McSpadden next complains that trial counsel did not refer to "the literature" on suggestive influences for impeachment, nor call "another witness who would qualify as an expert in this murky area." This new factual allegation is both unexhausted and conclusory. McSpadden has not provided an affidavit from an expert in the putative field of "statement validity analysis," as it is sometimes called; nor has he presented any literature on the subject, making the allegation conclusory. Even if McSpadden now tried to present facts in support of this allegation, those facts would be exhausted. Additionally,

13

McSpadden did present expert witness testimony contradicting the state's expert on the reliability of statements by children that they had been sexually abused 3 SF 81. This witness Joellen Pascual, was able to testify without objection from the state until redirect when she tried to testify about her observations of the victim in the hall during the trial, when it was objected that she had no expertise in that area. 3 SF 99. Finally, there was rebuttal testimony by other girls besides Sheri that McSpadden had sexually abused them, so an expert on statement validity analysis would have had little impact on this trial.

**Failure to advise McSpadden on the hazards of testifying in his own behalf.** This factual allegation is both unexhausted and conclusory, as we have only the McSpadden's word to support this claim, which is not sufficient to support federal habeas relief.

**Failure to move for a mistrial.** The trial court asked defense counsel if he wanted a mistrial. The trial court was trying to clarify what Banks was seeking, not saying that he could have a mistrial just by asking for it. Banks responded "What I want is sanctions against the State, that they cannot put on any of the witnesses that are out there in the hallway . . . " 3 SF 106. After testimony that the victim's father had, indeed, been speaking with his ex-wife about matters testified to in the courtroom, the State was not allowed to put on any of the witnesses who heard the victim's father. 3 SF 109. McSpadden was not harmed by the violation of the Rule and, therefore, was not entitled to a mistrial.

**Witness rule related ineffectiveness.** McSpadden claims that a witness who violated the Rule was allowed to testify. This allegation is unsupported by the record.

**Final argument ineffectiveness.** This allegation, that trial counsel should have but failed to object to portions of the State's argument regarding parole at sentencing, is unexhausted.

**Sentencing ineffectiveness.** McSpadden next alleges that trial counsel was ineffective for failing to put on any mitigation witnesses at punishment. This factual allegation is both unexhausted and conclusory, as McSpadden presents no affidavits in support of his claim regarding uncalled punishment witnesses. McSpadden himself testified that he had been successfully treated for

14

depression after a suicide attempt and had no mental illness. 3 SF 32. While McSpadden claims about the State's inquiry into his mental health, McSpadden opened th door.

**Appellate ineffectiveness.** McSpadden next alleges that trial counsel was ineffective for allowing McSpadden to waive his right to appeal. This factual allegation is unexhausted. However, given the rebuttal testimony of McSpadden's other victims, it appears that the consequences Valle described in McSpadden's presence were likely to have occurred. At trial, Valle announced that two other separately indicted cases were scheduled to go to trial in the two weeks following this trial. 2 SF 2. McSpadden would likely have been convicted in the other cases and those other sentences would have been stacked on top of the sentence in this case, had he not waived his right to appeal.

Additionally. McSpadden has not demonstrated that he would have been successful on appeal had he filed an appeal. To make out a claim of ineffective appellate counsel, a petitioner must meet the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984): deficient performance and resulting prejudice. *Smith v. Robbins*, 120 S. Ct. 746, 764 (2000). To establish the former, he must show that "counsel unreasonably failed to discover [and raise] nonfrivolous issues." *Id.* Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Id.* at 765 (citing *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308 (1983)). Thus, it is possible that an ineffectiveness claim may be "based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Id.* (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

To establish prejudice, the petitioner "must show a reasonable probability that, [but for counsel's error], he would have prevailed on appeal." *Id.* at 764 (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). To do this, he must show "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Id.* at 766. McSpadden has not established that he would have been successful on appeal had one been filed.

15

7.  **Ineffective assistance of counsel constitutes "cause" for procedural bar:**

**Conflict of interest.** McSpadden claims that Banks' representation of McSpadden's ex-wife after McSpadden's conviction constitutes a conflict of interest at a critical stage of McSpadden's representation, even though that representation concluded when McSpadden waived his appeal. This factual allegation was not made during the state habeas proceedings. The allegation there was that his ex-wife framed him for the sole purpose of burglarizing his house and stealing his property.

Additionally, Banks did not represent McSpadden in the state habeas proceedings, so it is difficult to understand how any alleged post-trial conflict impacted his ability to raise allegations, the factual predicate of which should have been apparent to McSpadden at trial.

**Fundamental miscarriage of justice.** McSpadden first claims that his waiver of appeal constitutes a fundamental miscarriage of justice when, in fact, it was a sensible decision. McSpadden next complains that Judge Everado Garcia was not qualified to preside over the trial, in that he was elected as a county court at law judge. He provides no evidence in support of that proposition.

McSpadden cites *Murray v. Carrier*, 477 U.S. 488 (1986), for the proposition that "interference by the prosecutor with appellate rights may make compliance impractical and cause for procedural default." What *Murray v. Carrier* says is

> Ineffective assistance of counsel, then, is cause for a procedural default. However, we think that the exhaustion doctrine, which is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings," *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982), generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.

*Id.* at 477 U.S. 489. The conflict of interest claim was not raised in the state court below; therefore, it should now be used at the basis of a procedural default without first returning this case to the state courts to exhaust this and many other unexhausted claims and allegations.

8.  **McSpadden's other allegations that are contradicted by the record:**

**Allegation that he was not allowed to attend his own arraignment.** This was first raised in the state writ, and it is false. McSpadden was told to stand by the judge and was arraigned on the record. 2 SF 8-9.

## IX.

## CONCLUSION

McSpadden has not shown that his claims rely on a new rule of constitutional law made retroactive by the Supreme Court or that his claims rely on a factual predicate that could not have been previously discovered by the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(1-2) (2000). Nor has he shown that the facts underlying his claims would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B) (2000). Therefore, McSpadden is not entitled to an evidentiary hearing on his claims.

Similarly, McSpadden has not shown that the state court's decisions regarding any of his claims were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Nor has he shown that those state court decisions resulted in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d) (1996). Therefore, McSpadden's claims do not merit federal habeas corpus relief.

WHEREFORE, PREMISES CONSIDERED, the Director respectfully requests that the court deny McSpadden an evidentiary hearing and dismiss the current action on the merits, with prejudice.

Respectfully submitted,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

17

MICHAEL T. McCAUL
Deputy Attorney General for
Criminal Justice

S. MICHAEL BOZARTH
Assistant Attorney General
Chief, Habeas Corpus Division

*[signature: Karyl Krug]*
KARYL KRUG
Assistant Attorney General
Attorney-In-Charge
State Bar No. 00786033

P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
Facsimile No. (512) 936-1280

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I, Karyl Krug, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Respondent Johnson's Response to Petitioner's Brief** has been served by placing same in the United States Mail, postage prepaid, on this the 3rd day of May, 2001, addressed to counsel for Robert Joe McSpadden:

Edward A. Stapleton, III
Assistant Federal Public Defender
600 E. Harrison Street, #102
Brownsville, Texas 78520

*[signature: Karyl Krug]*
KARYL KRUG
Assistant Attorney General

18