UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

AUG 0 8 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

ROBERT JOE McSPADDEN,          §
Petitioner,                    §
                               §
v.                             §
                               §        CIVIL ACTION NO. B-94-289
                               §
GARY JOHNSON, DIRECTOR,        §
TEXAS DEPARTMENT OF CRIMINAL   §
JUSTICE, INSTITUTIONAL DIVISION, §
Respondents.                   §

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner has filed a timely 28 U.S.C. Section 2254 Application to Vacate , Set Aside or

Correct Sentence.  This Court narrows its findings to two issues: 1) the prejudice inflicted upon

the Petitioner due to a mid-trial transfer of judges, and 2) his counsel's ineffectiveness.  After

examining the record, the pleadings of the parties, and conducting an evidentiary hearing, this

Court utilizes a totality of the circumstances test to find that Petitioner's conviction and sentence

can not constitutionally be upheld.  For the reasons set out below, Petitioner's 28 U.S.C. Section

2254 Application should be GRANTED.

### PROCEDURAL BACKGROUND

The Director of the Texas Department of Criminal Justice, Institutional Division,

currently possesses lawful custody of Petitioner Robert Joe McSpadden pursuant to a judgment

and sentence of the 107th District Court of Cameron County, Texas.[1]  McSpadden pleaded not

guilty to the indictment and was convicted by a jury for the felony offense of aggravated sexual

---

[1] See State of Texas v. Robert McSpadden, Cause No. 91-CR-887-C.

1

assault of a child (namely, Sherry Corkhill).  On October 17, 1991, the jury assessed a

punishment of life confinement.

Petitioner McSpadden did not file a direct appeal of his conviction.  He waived appeal as

part of a deal to dismiss other cases that were pending against him.  He has, however, filed one

application for writ of habeas corpus in state court.  The state habeas application was denied

without written order on September 14, 1993.[2]

McSpadden now brings this petition for relief pursuant to 28 U.S.C. Section 2254.  The

Government, in turn, has filed a reply to the petition which urges that relief be denied because the

Petitioner failed to exhaust his state remedies.

### ISSUES PRESENTED

Petitioner seeks federal habeas relief pursuant to 28 U.S.C. Section 2254, and the

following grounds will be addressed[3]:

---

[2] See Ex Parte McSpadden, Appl. No. 26,733-01 at cover.

[3] Petitioner McSpadden originally made the following claims in his habeas petition:
1)  He was denied due process because:
    a.  He was not allowed to attend his arraignment;
    b.  He was only given twenty minutes to conduct voir dire;
    c.  The rule of witnesses was in effect but the witnesses were briefed all through the trial;
    d.  He was not allowed a continuance to offer rebuttal evidence;
    e.  He was tried for several offenses in one trial and then waived appeal in exchange for dismissal of the cases upon which he had already been tried.
2)  He was denied effective assistance of counsel because his trial attorney:
    a.  Only spent two hours with him prior to trial;
    b.  Failed to contact all witnesses;
    c.  Failed to do any investigation;
    d.  Was inadequate in his preparation and gave incorrect advice;
    e.  Failed to interview all of the state's witnesses;
    f.  Failed to act on McSpadden's questions and errors that McSpadden pointed out;
    g.  Gave no advice at the post-trial meeting with the District Attorney.
3)  He was the victim of prosecutorial misconduct in that:

1)    The prejudice sustained by the Petitioner due to a transfer of judges after jury

selection; and

2)    Trial counsel's ineffectiveness, specifically:

    a)    His failure to consult with and or object to a substitution of judges in the middle of the trial;

    b)    His failure to object at crucial stages during the cross-examination of the Petitioner;

    c)    His ineffectiveness during voir dire;

---

a.    The prosecutor made racial and religious remarks during voir dire;
b.    The jury was allowed to see McSpadden locked up;
c.    The prosecutor asked McSpadden about being in the Army, being a paramedic, and being a peace officer, knowing that he had no identification;
d.    The prosecutor produced a surprise witness and alluded to evidence that McSpadden was not allowed to rebut;
e.    The prosecutor made inflammatory remarks and called McSpadden names during closing argument.

Thereafter, Petitioner was appointed counsel, and his attorney raised the following claims in a brief in support of a writ of habeas corpus:

1)    An unfair trial was conducted as demonstrated by an overview of the cross examination of Mr. McSpadden.
2)    His trial counsel was ineffective during pre-trial preparations.
3)    His trial counsel was ineffective during trial in the following ways:
    a.    Voir dire related ineffectiveness;
    b.    Opening statement ineffectiveness;
    c.    Defense evidence ineffectiveness, including:
        i.    Pediatric expert testimony,
        ii.    Expert regarding suggestive influences on children's victim testimony,
        iii.    Failure to advise on the hazards of the defendant testifying;
    d.    Failure to move for a mistrial;
    e.    Witness rule related ineffectiveness;
4)    Sentencing ineffectiveness; and
5)    Appellate ineffectiveness.

Due to a conflict of interest, Petitioner's first habeas attorney withdrew from the case, and a new attorney was appointed. During the March 25, 2002, Evidentiary Hearing before Judge Recio, Petitioner significantly redacted his previous claims for relief. Essentially, the prejudice that he received as a result of the transfer of judges and his trial counsel's ineffectiveness were the only two claims raised at the evidentiary hearing. This Court treated Petitioner's actions as an amendment to his pleading, and addresses only these two claims for relief in this Report and Recommendation.

3

d)     His ineffectiveness during pre-trial preparations;

e)     His failure to move for a mistrial when "the Rule" had been violated;

f)     The cumulative effect of Petitioner's counsel's ineffectiveness, which led to the government's case becoming a non-adversarial proceeding, and ultimately resulted in an unfair trial.

## LEGAL STANDARD – § 2254 PETITIONS IN FEDERAL COURT

As a preliminary matter, a state prisoner seeking federal court review of his conviction pursuant to Title 28 U.S.C. Section 2254 must assert a violation of a federal constitutional right.[4] Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented.[5]  In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.[6]  The question before a federal habeas corpus court is not whether the state court

---

[4] See Lawrence v. Lensing, 42 F.3d 255, 258 (5th Cir. 1994); Gray v. Lynn, 6 F.3d 265, 268 (5th Cir. 1993); and Lowery v. Collins, 988 F.2d 1364, 1367 (5th Cir. 1993).

[5] See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102 (1990); Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984); Hill v. Johnson, 210 F.3d 481, 490-91 (5th Cir. 2000), cert. denied, 532 U.S. 1039, 121 S.Ct. 2001 (2001); Green v. Johnson, 160 F.3d 1029, 1035 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999); Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997), cert. denied sub nom. Johnson v. Monroe, 522 U.S. 1003 (1997); West v. Johnson, 92 F.3d 1385, 1404 (5th Cir. 1996), cert. denied, 520 U.S. 1242 (1997); Pemberton v. Collins, 991 F.2d 1218, 1223 (5th Cir. 1993), cert. denied 510 U.S. 1025 (1993); Lavernia v. Lynaugh, 845 F.2d 493, 496 (5th Cir. 1988); Rault v. Butler, 826 F.2d 299, 302 n.1 (5th Cir. 1987), cert. denied, 483 U.S. 1042 (1987); and Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986), cert. denied, 479 U.S. 930 (1986).

[6] See Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991), cert. denied, 502 U.S. 875 (1991). "[F]ederal courts do not sit as courts of appeal and error for state court convictions." Dillard v. Blackburn, 780 F.2d 509, 513 (5th Cir. 1986). Accord Bridge v. Lynaugh, 838 F.2d 770, 772 (5th Cir. 1988). This Court does not review a state prisoner's federal habeas corpus petition to determine whether the state appellate courts correctly construed and applied state law.  Federal habeas corpus relief does not lie for errors of state

4

correctly applied its own interpretation of state law; rather, the question is whether the petitioner's federal constitutional rights were violated.[7]

## ANALYSIS

In this case, the Petitioner's federal constitutional rights have been violated. Namely, his right to a fair trial as guaranteed by the 6th Amendment was deprived as a result of the cumulative errors his trial counsel committed. Petitioner's federal due process rights were also violated by the unusual trial and habeas corpus procedures which were employed in state court.

## LEGAL STANDARD – FAILURE TO EXHAUST STATE REMEDIES

The government contends that Petitioner McSpadden has not sufficiently exhausted his state remedies as required by 28 U.S.C. § 2254 (b) and (c). A petitioner must fully exhaust state remedies before seeking federal habeas relief.[8] Exhaustion entails the submission of a factual and legal basis of any claim to the highest available state court for review.[9] A Texas prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review or an application for writ of habeas corpus.[10] To exhaust in accordance with Section 2254, a petitioner must fairly present all claims to the state courts prior to raising them in federal

---

law. See Estelle v. McGuire, 502 U.S. at 67-68, 112 S.Ct. at 480; Lewis v. Jeffers, 497 U.S. at 780, 110 S.Ct. at 3102; Pulley v. Harris, 465 U.S. at 41, 104 S.Ct. at 874; Pemberton v. Collins, 991 F.2d at 1223; Lavernia v. Lynaugh, 845 F.2d at 496; Rault v. Butler, 826 F.2d at 302 n.1; and Neyland v. Blackburn, 785 F.2d at 1293.

[7] See Hill v. Johnson, 210 F.3d at 490-91; and Neyland v. Blackburn, 785 F.2d at 1289.

[8] See 28 U.S.C. § 2254(b).

[9] See Richardson v. Procunier, 762 F.2d 429, 432 (5th Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982); Ruston v. State, 2002 WL 1733724, at *2 (N.D. Tex. July 25, 2002).

[10] See Bautista v. McCarter, 793 F.2d 109, 110 (5th Cir. 1986); Richardson, 762 F.2d at 432; Ruston, 2002 WL 1733724 at *2.

court.[11]  Federal courts can dismiss without prejudice a federal petition for writ of habeas corpus that contains unexhausted grounds for relief.[12]

The exhaustion requirement codified in 28 U.S.C. § 2254 "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights."[13]  The requirement, however, is not absolute.[14]  Exhaustion is not required, "if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief."[15]

## ANALYSIS

Petitioner McSpadden waived his right to direct appeal in exchange for a prosecutorial agreement entailing that two other indictments, which were pending against McSpadden at the time of his conviction, would be dismissed.  McSpadden did file a state writ of habeas corpus in accordance with Texas Code of Criminal Procedure, Article 11.07.  Judge Everardo Garcia recommended that McSpadden's state writ be denied.  In accordance with statutory procedure, the Court of Criminal Appeals denied McSpadden's state on September 14, 1994.  In Judge Garcia's May 16, 1994 order, which was subsequently sent to the Court of Criminal Appeals,

---

[11] See Deters v. Collins, 985 F.2d 789, 795 (5th Cir. 1993); Ruston, 2002 WL 1733724 at *2.

[12] See Rose v. Lundy, 455 U.S. 509, 510 (1982); Ruston, 2002 WL 1733724 at *2.

[13] Duckworth v. Serrano, 454 U.S. 1, 3 (1981); see also Ruston, 2002 WL 1733724 at *2.

[14] See 28 U.S.C. § 2254(b) (outlining two scenarios which excuse a petitioner's failure to exhaust).

[15] Duckworth, 454 U.S. at 3; Ruston, 2002 WL 1733724 at *2.

6

Garcia claimed that McSpadden's application "fail[ed] to present a controverted, previously-unresolved issue of fact which is material to the legality of the Defendant's confinement."[16] The Court of Criminal Appeals then denied McSpadden's Application without written order.[17] Judge Garcia, a County Court at Law judge in Cameron County, was appointed by Judge Darrell Hester to preside over McSpadden's trial. However, Judge Hester presided over the voir dire of the case prior to the transfer to Judge Garcia.

Under the Texas Code of Criminal Procedure, Article 11.07, Section 3(b) a state writ of habeas corpus is filed with the clerk of the court in which the conviction being challenged is obtained.[18] The clerk then assigns the application to the appropriate court.[19] In McSpadden's state writ, he raised concerns about the validity of the jury selection process in his case. Judge Garcia recommended that the petition be denied even though he did not preside over voir dire *and* no transcript of jury selection was ever prepared. It is not clear whether a court reporter was present during voir dire and the notes taken were lost, or if there simply was not a court reporter at the proceeding at all. Regardless, extensive attempts by this court to obtain a transcript of the jury selection in Mr. McSpadden's case have been unsuccessful. Judge Garcia was not present during jury selection and had no record available to him in order to ascertain that McSpadden failed to present a controverted issue which is material to the legality of Petitioner's

---

[16] State v. McSpadden, No. CR-91-887-C, State Record at 12.

[17] Ex Parte McSpadden, Appl. No. 26,733-01 at cover.

[18] TEX. CRIM. PROC. CODE ANN. art. 11.07, § 3(b) (Vernon 2001)..

[19] Id.

confinement.[20] Trial counsel for Mr. McSpadden never objected to the transfer of judges.

Petitioner significantly narrowed his claims for habeas review during the evidentiary hearing. This Court has treated the change as an amendment to Petitioner's application for relief under Section 2254. Essentially, McSpadden argued at the evidentiary hearing that he was entitled to relief due to the changing of judges after voir dire and because his trial counsel was ineffective. Petitioner did exhaust his state remedies on *both* of these claims. In Petitioner's "Ground for Relief Three" and "Ground for Relief Four" of his state writ of habeas corpus, Petitioner addressed his counsel's pre-trial and trial ineffectiveness as well as the transfer of judges after voir dire.[21] Petitioner claimed that he was prejudiced severely by both of these events. The claims were heard and dismissed by the Texas Court of Criminal Appeals; therefore, the exhaustion requirement is satisfied in this case.[22]

The adequacy of the state court's determinations regarding the legality of Petitioner's conviction warrants federal review of the voir dire situation and McSpadden's counsel's ineffectiveness during the course of the state proceedings.

### LEGAL STANDARD – INEFFECTIVE ASSISTANCE OF COUNSEL

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in the case of *Strickland v. Washington*:

---

[20] State v. McSpadden, No. CR-91-887-C, State Record at 12.

[21] Petitioner's State Writ of Habeas Corpus at 3.

[22] See Bautista, 793 F.2d at 110; Richardson, 762 F.2d at 432.

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[23]

In order to demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness."[24]  In so doing, a convicted defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance.[25]  The courts are extremely deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight.[26]  It

---

[23] Strickland v. Washington, 466 U.S. 668, 687 (1984).

[24] See Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Darden v. Wainwright, 477 U.S. 168, 184 (1986); Strickland v. Washington, 466 U.S. at 687-88; Lackey v. Johnson, 116 F.3d 149, 152 (5th Cir. 1997); Andrews v. Collins, 21 F.3d 612, 621 (5th Cir. 1994), cert. denied, 513 U.S. 1114 (1995); Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992), cert. denied, 507 U.S. 1056 (1993); and Black v. Collins, 962 F.2d 394, 401 (5th Cir. 1992), cert. denied, 504 U.S. 992 (1992).

[25] See Strickland v. Washington, 466 U.S. at 687-91; Jones v. Cain, 227 F.3d 228, 231 (5th Cir. 2000) (holding that trial counsel's decision not to put defendant on the stand in light of defendant's prior criminal record is a judgment call which seldom, if ever, will support a claim of ineffective assistance); Green v. Johnson, 160 F.3d 1029, 1035 n.1 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997), cert. denied, 523 U.S. 1099 (1998); Belyeu v. Scott, 67 F.3d 535, 538 (5th Cir. 1995), cert. denied, 517 U.S. 1144 (1996); Duff-Smith v. Collins, 973 F.2d at 1182. A federal habeas petitioner must carry the burden of demonstrating both counsel's deficient performance and resultant prejudice. See Burnett v. Collins, 982 F.2d 922, 928 (5th Cir. 1993); Martin v. Maggio, 711 F.2d 1273, 1279 (5th Cir. 1983), cert. denied, 469 U.S. 1028 (1984).

[26] See Lockhart v. Fretwell, 506 U.S. 364, 372 (1993); Burger v. Kemp, 483 U.S. 776, 789 (1987); Strickland v. Washington, 466 U.S. at 689; United Stats v. Drones, 218 F.3d 496, 500-03 (5th Cir. 2000); Carter v. Johnson, 131 F.3d at 463; Williams v. Cain, 125 F.3d 269, 276 (5th Cir. 1997), cert. denied, 525 U.S. 859 (1998); Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997); United States v. Gaudet, 81 F.3d 585, 592 (5th Cir. 1996); and Belyeu v. Scott, 67 F.3d at 538. The deficiency prong of Strickland is judged

is strongly presumed that counsel has rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment.[27]  An attorney's strategic choices,

usually based on information supplied by the defendant and from a thorough investigation of

relevant facts and law are virtually unchallengeable.[28]  Counsel is required neither to advance

every non-frivolous argument nor to investigate every conceivable matter inquiry into which

could be classified as non-frivolous.[29]  A criminal defense counsel is not required to exercise

---

by counsel's conduct under the law existing at the time of the conduct, see Westley v. Johnson, 83 F.3d 714, 723 (5th Cir. 1996), cert. denied, 519 U.S. 1094 (1997), and in view of the facts and resources available at the time of trial.  See Williams v. Cain, 125 F.3d at 276, citing Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994), cert. denied, 513 U.S. 960 (1994).

[27] See Strickland v. Washington, 466 U.S. at 690; and Duff-Smith v. Collins, 973 F.2d at 1182.

[28] See Jones v. Jones, 163 F.3d 285, 300 (5th Cir. 1998), cert. denied, 528 U.S. 895 (1999); Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997), cert. denied, 522 U.S. 944 (1997); Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997) (stating that "a conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness"); Boyle v. Johnson, 93 F.3d 180, 187-88 (5th Cir. 1996), cert. denied, 519 U.S. 1120 (1997) (holding that an attorney's decision not to pursue a mental health defense or to present mitigating evidence concerning the defendant's possible mental illness was reasonable where counsel was concerned that such testimony would not be viewed as mitigating by the jury and that the prosecution might respond to such testimony by putting on its own psychiatric testimony regarding the defendant's violent tendencies); West v. Johnson, 92 F.3d 1385, 1406-09 (5th Cir. 1996), cert. denied, 520 U.S. 1242 (1997) (ruling that a trial counsel's failure to conduct further investigation into the defendant's head injury and psychological problems was reasonable where interviews with the defendant and the defendant's family failed to produce any helpful information); Bryant v. Scott, 28 F.3d 1411, 1435 (5th Cir. 1994), citing Strickland v. Washington, 466 U.S. at 691; and Andrews v. Collins, 21 F.3d at 623 (deciding that counsel acted reasonably in failing to further pursue the defendant's mental capacity or background where counsel had no reason to believe that further investigation would be useful).

[29] See Neal v. Cain, 141 F.3d 207, 214-15 (5th Cir. 1998) (holding that petitioner's complaints regarding counsel's failure to raise specific defenses did not satisfy prejudice prong of Strickland where proposed defenses were without merit); Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (ruling that "counsel cannot be deficient for failing to press a frivolous point"); United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) (opining that "counsel is not required by the Sixth Amendment to file meritless motions"); Smith v. Collins, 977 F.2d 951, 960 (5th Cir. 1992), cert. denied, 510 U.S. 829 (1993) (revealing that "the defense of a criminal case is not an undertaking in which everything not prohibited is required; nor does it contemplate the employment of wholly unlimited time and resources"); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) (stating that "counsel is not required to make futile motions or objections"); Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985) (holding that defense counsel is not required to

10

clairvoyance during the course of a criminal trial.[30]  Likewise, the Sixth Amendment does not

require that counsel do what is impossible or unethical; if there is no bona fide defense to the

charge, counsel is not required to create one.[31]

The proper standard for evaluating counsel's performance under the Sixth Amendment is

"reasonably effective assistance."[32]  "An error by counsel, even if professionally unreasonable,

does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on

the judgment."[33]  "Accordingly, any deficiencies in counsel's performance must be prejudicial to

the defense in order to constitute ineffective assistance under the Constitution."[34]  In order to

establish that he has sustained prejudice, the convicted defendant "must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome."[35]  The prejudice prong of *Strickland* focuses on whether counsel's

deficient performance rendered the result of the trial unreliable or the proceeding fundamentally

---

investigate everyone whose name is mentioned by the defendant).

[30] See Sharp v. Johnson, 107 F.3d 282, 290 n.28 (5th Cir. 1997), citing Garland v. Maggio, 717 F.2d 199, 207 (5th Cir. 1983) (holding that clairvoyance is not a required attribute of effective representation). See also Lackey v. Johnson, 116 F.3d at 152 (ruling that trial counsel was not ineffective for failing to discover evidence about which the defendant knew but withheld from his counsel).

[31] See United States v. Cronic, 466 U.S. 648, 656 n.19 (1984); Jones v. Jones, 163 F.3d at 303.

[32] Strickland v. Washington, 466 U.S. at 687; Bullock v. Whitley, 53 F.3d 697, 700 (5th Cir. 1995).

[33] Strickland v. Washington, 466 U.S. at 691, 104 S.Ct. at 2067.

[34] Id.

[35] See Williams v. Taylor, 529 U.S. at 391; Strickland v. Washington, 466 U.S. at 694.

11

unfair; unreliability or unfairness does not result if the ineffectiveness of counsel does not

deprive the defendant of any substantive or procedural right to which the law entitles him.[36]

Given the language of *Strickland* itself, the test applies to the conduct of counsel both in

preparation for and at trial.[37]  An attorney's failure to investigate the case against the defendant

and to interview witnesses can support a finding of ineffective assistance.[38]  The extent of an

attorney's investigation into an area must be viewed in the context of the defendant's cooperation

with the attorney's investigation and with a heavy measure of deference to counsel's judgments.[39]

Due to the fact that a convicted defendant must satisfy both prongs of the *Strickland* test,

a failure to establish either deficient performance or prejudice under that test makes it

unnecessary to examine the other prong.[40]  Therefore, a failure to establish that counsel's

performance fell below an objective standard of reasonableness avoids the need to consider the

---

[36] See Williams v. Taylor, 529 U.S. at 393 n.17; Strickland v. Washington, 466 U.S. at 692.

[37] See, e.g., Martin v. McCotter, 796 F.2d 813, 816-17 (5th Cir. 1986), cert. denied, 479 U.S. 1057 (1987) (holding that the *Strickland* test applied to both the trial and sentencing phases of a criminal proceeding); and Nealy v. Cabana, 764 F.2d 1173, 1178-80 (5th Cir. 1985).

[38] See Moore v. Johnson, 194 F.3d 586, 608 & 616 (5th Cir. 1999); and Bryant v. Scott, 28 F.3d at 1435.

[39] See Carter v. Johnson, 131 F.3d at 463; and Randle v. Scott, 43 F.3d 221, 225 (5th Cir. 1995), cert. denied, 515 U.S. 1108 (1995) (ruling that trial counsel was not ineffective for failing to investigate the validity of the defendant's prior conviction where the defendant was aware that the prior conviction had been reversed but failed to disclose same to his counsel and, instead, instructed his counsel to cease investigation into the matter so as to expedite the defendant's entry of a guilty plea).  However, an attorney who is aware of potential mitigating evidence is obligated to investigate the existence of such evidence beyond merely communicating with the defendant. Ransom v. Johnson, 126 F.3d at 723.

[40] See Strickland v. Washington, 466 U.S. at 700; Ransom v. Johnson, 126 F.3d at 721; Green v. Johnson, 116 F.3d at 1122; United States v. Seyfert, 67 F.3d 544, 547 (5th Cir. 1995); and Armstead v. Scott, 37 F.3d at 210. See also Burnett v. Collins, 982 F.2d 922, 928 (5th Cir. 1993) (holding that the defendant bears the burden of proof on both prongs of the *Strickland* test).

issue of prejudice.[41] It is also unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice.[42] Mere conclusory allegations in support of claims of ineffective assistance of counsel are insufficient, as a matter of law, to raise a constitutional issue.[43]

## ANALYSIS

Cumulative trial errors including, but not limited to, counsel's performance falling below the *Strickland* standard, forces this Court to recommend that Petitioner McSpadden's writ of habeas corpus be granted. Petitioner McSpadden's federal constitutional rights were violated due to the fact that an examination of the state court proceedings leads this Court to determine that under a totality of the circumstances test, a deprivation of McSpadden's guaranteed Sixth Amendment right to a fair trial occurred; therefore this Court must take the appropriate action.

### *Ineffective Assistance of Counsel – Substitution of Judges*

A presiding judge of a judicial administrative region may appoint a county court at law judge to sit for a district judge in a district court case in the same county in Texas.[44] In this case, Cameron County district judge Darrell Hester appointed county judge Everardo Garcia to the

---

[41] See United States v. Hoskins, 910 F.2d 309, 311 (5th Cir. 1990); and Thomas v. Lynaugh, 812 F.2d 225, 229-30 (5th Cir. 1987), cert. denied, 484 U.S. 842 (1987).

[42] See Black v. Collins, 962 F.2d at 401; Bates v. Blackburn, 805 F.2d 569, 578 (5th Cir. 1986), cert. denied, 482 U.S. 916 (1987); and Martin v. McCotter, 796 F.2d 813, 821 (5th Cir. 1986), cert. denied, 479 U.S. 1057 (1987).

[43] See Kinnamon v. Scott, 40 F.3d 731, 735 (5th Cir. 1994), cert. denied, 513 U.S. 1054 (1994); Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994); United States v. Pineda, 988 F.2d 22, 23 (5th Cir. 1993); Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990); Russell v. Lynaugh, 892 F.2d 1205, 1213 (5th Cir. 1989), cert. denied, 501 U.S. 1259 (1991); United States v. Woods, 870 F.2d 285, 288 n.5 (5th Cir. 1989); and Ross v. Estelle, 694 F.2d 1008, 1011-12 & n.2 (5th Cir. 1983).

[44] TEX. GOV'T CODE ANN. § 74.054 (Vernon 2002).

13

107th District Court on Cameron County, Texas, on October 11, 1991. Judge Hester, the presiding judge of the Fifth Administrative Judicial Region in Texas, made the assignment for the period beginning October 14, 1991, and ending October 18, 1991.

However, on October 14, 2001, Judge Hester conducted voir dire in Petitioner McSpadden's case. After a jury panel was selected, the case was then transferred to Judge Garcia. No notice was given to Mr. McSpadden or his attorney Robert Banks regarding the transfer until they appeared to start the trial the following day. Mr. Banks did not object to the mid-trial transfer of Judge Garcia.[45]

Mr. Banks' failure to object was important for a variety of different reasons. Judge Garcia was vastly less experienced at handling first degree felony cases than Judge Hester. However, the decision not to object by Mr. Banks became more problematic for McSpadden after the trial was over. Mr. McSpadden raised serious objections to the manner in which voir dire was conducted in his state habeas corpus petition (as will be discussed in more detail later in this report). Judge Garcia, years later, summarily dismissed these claims.[46] In other words, Judge Garcia ruled that McSpadden was not prejudiced during voir dire even though Garcia was not present to conduct voir dire. Under Texas law, it is not clear whether a mid-trial transfer is

---

[45] See State v. Torres, 805 S.W.2d 418, 420 (Tex. Crim. App. 1991) (noting that jeopardy attaches in a criminal case in Texas when the jury is empaneled and sworn); Garza v. State, 658 S.W.2d 152, 155 (Tex. Crim. App. [Panel Op.] 1982), cert. denied, 464 U.S. 863 (1983).

[46] An application for a state writ of habeas corpus in Texas is filed after final conviction in a felony case, other than a case in which the death penalty is imposed, and must be filed with the clerk of the court in which the conviction being challenged was obtained. The clerk will then assign the application to the specific court of conviction. See Tex. Code Crim. Proc. Ann. art. 11.07 (Vernon 2001). In this case, since Judge Garcia handled the case post-voir dire, it was he who rule on McSpadden's state petition.

14

constitutional.  Mr. Banks, who testified that in 1991 criminal cases made up a minority of his practice, did not object and the result prejudiced McSpadden greatly.

*Ineffective Assistance of Counsel – Failure to Object at Crucial Stages of Cross-Examination*

The State and Mr. Banks entered into a pre-trial agreement in which the state would approach the bench before introducing any extraneous acts purportedly committed by the defendant at trial.  However, on numerous occasions during the cross-examination of Mr. McSpadden, the prosecutor asked the Petitioner questions which attempted to introduce extraneous, prejudicial material against McSpadden.  Although Mr. Banks objected a few times, as pointed out by the Attorney General's office during the evidentiary hearing, he failed to object at other crucial times in which the prosecution successfully introduced extraneous crimes allegedly committed by Mr. McSpadden.  On one such occasion, the prosecutor questioned Mr. McSpadden about another case involving the victim's sister, Kerry Corkhill:

Q:    Let's talk about Kerry a little bit.  You don't like Kerry, huh?

A:    No, sir.

Q:    You made sexual advances at Kerry also, didn't you?

A:    No, sir.

Q:    That is why she doesn't like you?

A:    No, sir.

Q:    You fondled her breasts, didn't you?

A:    No, sir.

Q:    The truth is, there is an indictment pending?

A:    Yes, sir.

Q:    Involving Sherry Corkhill also?

A:    Yes, sir.

Q:    This incident happened in the laundry room, didn't it?

A:    Sir?

Q:    Involving Kerry?

A:    No, sir.

Q:    You wanted her to sit on your lap, didn't you?

A:    No, sir.

Q:    She is lying too?

A:    Sir?

Q:    Kerry is lying?

A:    Yes, sir.

Q:    And Sherry is lying?

A:    Yes, sir.

Q:    A little bit about dirty movies.  Have you ever seen dirty

       movies?

A:    A couple of times, sir.

Q:    What kind of dirty movies have you seen?

A:    Just regular movies that are on Cinemax.

Q:    Now, you haven't seen any really dirty movies in your Army

       career or whatever?

A:    Oh. Yes, sir.

Q:    You have?

A:    Yes, sir.

Q:    What kind?

A:    The regular dirty movies that you see in the Army, sir.

Q:    Any of those dirty movies involve little children, sir?

A:    No, sir.

Q:    You like little children, don't you?

A:    I really don't like children much at all, sir.

Q:    You like them sexually, don't you?

A:    No, I don't, sir.[47]

At no point during the line of questioning did Mr. Banks object to the state's attempt link Mr. McSpadden to extraneous offenses. Additionally, the government never approached the bench before asking any of the above mentioned questions. Mr. Banks claims that his client had "opened the door" for this extraneous material to be introduced, however, he made no objection to determine *from the judge* if the door had been opened.

### *Ineffective Assistance of Counsel – Voir Dire*

Although no record of jury selection in the Petitioner's case was transcribed, by Mr. Banks' own testimony at the evidentiary hearing in this matter, it appears that his representation was ineffective. Judge Hester, the district judge that only presided over jury selection in the Petitioner's case, gave each side only twenty minutes to conduct voir dire. The Texas Court of Criminal Appeals has ruled that, so long as the defendant does not ask unnecessary questions in

---

[47] Trial Trans., Vol. III at 43-45.

order to prolong voir dire, that a thirty minute time restriction imposed by the judge in a drug

prosecution is not enough time to conduct an adequate voir dire.[48]  In this case, defense counsel

was only given twenty minutes to conduct jury selection in a first-degree felony case in which

life imprisonment was a possibility.  However, Mr. Banks did not object to such a short time

period in which to examine sixty-seven potential jurors.  Mr. Banks gave the following

explanation:

> Q:    Why didn't you object to the twenty minutes?
>
> A:    Under the circumstances it was obvious.  This is a case where if
>       you ask an individual juror, 'are you against sexual assault on a
>       child,' you're going to get an answer 'yes.'  A lot of this would
>       be a total waste of time because you know what the jurors are –
>       what their opinion is going to be.  It's that type of case.[49]

This was also a case in which children and medical experts would be testifying, but still

Mr. Banks chose not to object to the brief time period imposed by Judge Hester.  Mr. Banks

claims that he did not ask unnecessary questions in order to prolong the voir dire; to the contrary,

---

[48] McCarter v. State, 837 S.W.2d 117, 122 (Tex. Crim. App. 1992).  In fact, other Texas appellate courts have found that judicial limitations on time during voir dire may warrant a reversal.  See Morris v. State, 1 S.W.3d 336, 339 (Tex. App.–Austin 1999, no pet.) (ruling that a 45 minute limitation was unreasonable in an aggravated assault with a deadly weapon case); Rios v. State, 4 S.W.3d 400, 401 (Tex. App.–Houston [1st Dist.] 1999, pet. granted) (finding that the court's decision in limiting defense counsel to 45 minutes for voir dire was not harmless in an aggravated robbery case); Tobar v. State, 874 S.W.2d 87, 88 (Tex. App.–Corpus Christi 1994, writ ref'd) (holding that a 45 minute limitation on defense counsel to select a jury was unreasonable in an aggravated sexual assault case).

In fairness to defense counsel in this case, it is important to note that the controlling precedence in Texas at the time McSpadden went to trial was an *en banc* decision in the case of Thomas v. State, 658 S.W.2d 175 (1983).  The Thomas Court ruled that time limitations placed upon defense counsel during his voir dire examination of prospective jurors was unduly restrictive and was such as to require reversal in that some jurors who served were not individually examined and, though counsel had relevant questions to ask individual jurors, he was not allowed to examine by reason of time limit.  The time limit in the case was 35 minutes.  See Thomas, 658 S.W.2d at 176.

[49] Evidentiary Hearing Trans. at 99.

Petitioner's attorney testified that he did no individual questioning of the jury panel whatsoever. Mr. Banks testified that he would have loved to have had eight hours in which to select the jury, but that he still did not find it important to object to only being given twenty minutes.[50]

Again, Judge Garcia ruled on Petitioner McSpadden's state writ of habeas corpus. Although it is true that this Court places great value upon the factual findings and conclusions of law made by state courts in the course of Petitioner's state habeas corpus proceedings, it is obvious in this situation that Judge Garcia ruled on an issue that was not before his Court. Judge Garcia was in no position to determine whether McSpadden's constitutional rights were infringed upon during voir dire because he did not preside over jury selection, and there is no transcript of the proceeding. From the testimony presented and an analysis of Texas state law, it is apparent that Mr. Banks was ineffective for failing to object to a twenty-minute time limitation during the jury selection of a case which involved a first degree felony that carried a possible life sentence.

*Ineffective Assistance of Counsel – Pre-Trial Preparations*

Robert Banks was hired by Mr. McSpadden in the middle of September, 1991, for a trial that started on October 14, 1991.[51] Mr. Banks testified at the evidentiary hearing in this matter that he did not file a motion specifically requesting that extraneous offenses be excluded.[52] In fact, in a letter responding to a claim filed by Mr. McSpadden with the State Bar of Texas, Mr.

---

[50] Id. at 98-99.

[51] Id. at 16.

[52] Id. at 80.

19

Banks stated that he had only met with his client two times, excluding the arraignment, before trial began.[53]

The Petitioner was indicted in three different cause numbers in Cameron County District Court, 91-CR-887-C (to which he was eventually convicted), 91-CR-888-C, and 91-CR-889-C. The latter two charges were eventually dropped as part of plea agreement in which Mr. McSpadden agreed not to take a direct appeal of his conviction. However, the trial transcript indicates that Mr. Banks was unsure as to which case the court would be proceeding on the day that trial began. In fact, on the morning of October 15, 1991, the following exchange occurred:

> THE COURT:    This is case number 91-CR-887-C, State versus Robert McSpadden. What says the State?
>
> MS. KOWALSKI:    The State is present and ready, Your Honor.
>
> THE COURT:    Okay. What says the defense?
>
> MR. BANKS:    The defendant is present and ready, Your Honor. I thought we had three indictments, Your Honor, that we were going on 87, 88, and 89.
>
> MS. KOWALSKI:    No, sir. Those are set for next – 88 is set for next week, and 89 is set for the following week.
>
> MR. BANKS:    When did that happen?
>
> MS. KOWALSKI:    It has always been like that. I don't know.
>
> THE COURT:    That is the only case I have, Mr. Banks. I don't know anything. That is the only case that Judge Hester assigned me to here.[54]

---

[53] See Doc. # 52, Exhibit A.

[54] Trial Trans., Vol. II at 2.

The logical implication of the aforementioned exchange is that Mr. Banks believed that he was selecting a jury for three cases on the previous day when he was given twenty minutes and made no objections to his inability to ask *any* individual questions of the prospective jurors.

*Ineffective Assistance of Counsel – Failure to Move for a Mistrial*

During Mr. McSpadden's trial, "the Rule"[55] was invoked prior to the first witness testifying.  However, Mr. Banks has testified that the victim's natural father, over a two day period, was leaving the courtroom and speaking to potential witnesses outside of the courtroom.[56] A hearing was held on this matter outside the presence of the jury, and during the evidentiary hearing the following questions were asked of Mr. Banks:

> Q:    (By Petitioner's present attorney Rene de Coss) Actually, Mr. Banks, you had a hearing on this, didn't you, outside the presence of the jury?
>
> A:    Yes.
>
> Q:    And the Court brought up the fact that Judge Garcia had seen Mr. Corkhill–
>
> THE COURT:    That had to do with the questions of the witnesses.
>
> MR. DE COSS:  Yes, Your Honor.

---

[55] TEX. R. EVID. 614.  Texas Rule of Evidence 614 is essentially the same as Federal Rule of Evidence 615.  Texas Rule of Evidence 614 reads as follows:
At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of:
(1) a party who is a natural person or in civil cases the spouse of such natural person;
(2) an officer or employee of a party in a civil case or a defendant in a criminal case that is not a natural person designated as its representative by its attorney;
(3) a person whose presence is shown by a party to be essential to the presentation of the party's cause; or
(4) the victim in a criminal case, unless the victim is to testify and the court determines that the victim's testimony would be materially affected if the victim hears other testimony at the trial.

[56] Evidentiary Hearing Trans. at 114-16.

THE COURT:    Talking to the witnesses in the hall?

MR. DE COSS:    Yes, Your Honor.

Q:    (By Mr. de Coss) Judge Garcia brought up the fact that he had seen [Mr. Corkhill] going out of the courtroom a number of times for the last two days, isn't that correct?

A:    Yes.

Q:    At that point, when this was brought up, the State case had already closed, right?

A:    I don't recall what phase it was in.  I believe you're right, but I don't know that as a fact.

Q:    So the Court is upset at the fact that the Rule had been violated, isn't that correct?

A:    Yes.

Q:    There was a question as to whether or not one or more of the witnesses that they intended to call for rebuttal was out there during the time that Mr. Corkhill was going in and out, isn't that true?

A:    Yes, I recall that.  There might have been two that they were going to put on.

Q:    As far as the rebuttal of the witnesses, those were not allowed to come back and testify at that point, right?

A:    Whatever they were going to use the witnesses in the hall for (sic) were not allowed to come back and testify; however, there were (sic) one, maybe two, if memory serves me right, witnesses that were not amongst that group.  I believe one of them was en route on an airplane or something and had not been there when the father was out there....[57]

Q:    Let me my (sic) direct you back to Page 26 of the transcript.  It says, "Mr. Banks" -- the Court says "Okay, do you want a

---

[57] Id. at 116-17.

Q:   declaration of a mistrial? ... But, basically, you did not ask for a mistrial at that point, right?

A:   No, I did not.

Q:   Even though you knew at that point that the Rule had been violated?

A:   Yes....[58]

Q:   Now, when you had this hearing outside the presence of the jury, you didn't ask for – you didn't try to ascertain how many witnesses had been talking to this guy for the last two days, did you?

A:   Repeat that, please.

Q:   You didn't ask Mr. Corkhill what specific witnesses he had been talking to during the prior two days?

A:   That's correct.[59]

*Ineffective Assistance of Counsel – Cumulative Effect*

The cumulative errors that the Petitioner's attorney made during his trial warrants setting aside the judgment of his criminal proceeding because the errors most likely had an effect on the judgment.[60]   Specifically, trial counsel's errors in the above mentioned areas establish that Petitioner McSpadden has sustained prejudice.   This Court is convinced that the convicted defendant has shown "that there is a reasonable probability that, but for counsel's unprofessional

---

[58] Id. at 118.

[59] Id. at 119.

[60] Strickland v. Washington, 466 U.S. at 691, 104 S.Ct. at 2067.

23

errors, the result of the proceeding would have been different.  A reasonable probability is a

probability sufficient to undermine confidence in the outcome."[61]

During the March 25, 2002, Evidentiary Hearing, Mr. Banks made reference to his

actions as strategic.  However, defense counsel's unreasonable strategic decisions amounted to

ineffective assistance of counsel.[62]  For example, Mr. Banks claimed that he failed to ask any

individual questions on voir dire because twenty minutes was enough time for him to adequately

select the jury.[63]  In a case involving children serving as witnesses and medical experts testifying

about sensitive sexual abuse issues, Mr. Banks' strategy simply was not reasonable, and his client

was prejudiced greatly.  Mr. Banks failed to gage the potential witness' attitudes toward the

emotionally-filled testimony that permeated throughout the trial of Mr. McSpadden with *any*

individual questioning.  Therefore, even if strategic, Mr. Banks' failure to conduct a meaningful

voir dire expose the fact that his performance was not even "reasonably effective."[64]

After a thorough review of the trial proceedings and trial counsel's ineffectiveness, this

Court lacks confidence in the outcome of Petitioner McSpadden's conviction and sentence.  This

Court is convinced that the state court proceedings were not adversarial and did not guarantee

---

[61] See Williams v. Taylor, 529 U.S. at 391; Strickland v. Washington, 466 U.S. at 694.

[62] See Beltran v. Cockrell, 294 F.3d 730, 735 (5th Cir. 2002).

[63] Evidentiary Hearing Trans. at 97.  Mr. Banks stated that "I would love to have had three hours, four hours, five hours, eight hours, and exhausted every conceivable avenue.  But with the voir dire by the judge, the half an hour or so we had to go over the jury questionnaires, and the questions not only I raised but the questions the district attorney raised with the jury I felt (sic) was adequate under the circumstances." See id.

[64] Strickland v. Washington, 466 U.S. at 687; Bullock v. Whitley, 53 F.3d 697, 700 (5th Cir. 1995).

Petitioner McSpadden his right to a fair trial as guaranteed by the 6th Amendment of the United States Constitution, as it is applied to the states via the 14th Amendment.

### RECOMMENDATION

For the reasons stated above, Petitioner McSpadden's Application for Relief pursuant to 28 U.S.C. § 2254 should be GRANTED. The combined effect of the mid-trial transfer of judges along with Petitioner's attorney's ineffective assistance led to a non-adversarial proceeding, and the conviction and sentence of the Petitioner can not constitutionally be upheld. Petitioner's conviction and sentence should be VACATED, and the State of Texas should either (1) set a new trial date that is within ninety days of entry of the district court's order or (2) release Petitioner unconditionally.

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon the grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[65]

DONE at Brownsville, Texas this 8th day of August, 2002.

Felix Recio
United States Magistrate Judge

---

[65] See Douglass v. United States Automobile Association, 79 F.3d 1415, 1417 (5th Cir. 1996).

25